## Case No. 13,675.

### SWANN et al. v. SANBORN et al.

[4 Woods, 625.][1]

Circuit Court, N. D. Florida. Dec. Term, 1878.

BANKRUPTCY—JURISDICTION OF DISTRICT COURTS—SUITS IN EQUITY — PARTNERSHIP—WHAT CONSTITUTES—FIRM AND INDIVIDUAL CREDITORS.

[1. A suit brought by a number of creditors against the assignee in bankruptcy of a member of a partnership, who in fact owned all the property used in the partnership business, to procure an adjudication that their debts, which were contracted in the firm name, were entitled to be first paid out of such property in preference to the claims of the individual creditors of the bankrupt, is a suit against an assignee "touching any property or rights of a bankrupt transferable to or vested in such assignee," within the meaning of Rev. St. § 4970, giving jurisdiction in such cases to the district court.]

[2. The district court having decided, in such case, that complainants were entitled to have the property in controversy applied first to the payment of their debts, it was within its jurisdiction as a court of equity to go further and provide for the application of the same to the payment of the debts, instead of turning complainants over to another court for complete relief.]

[3. A person loaning money to another, who uses the same in carrying on a business under the style of a firm, consisting of his own name with "& Co." annexed to it, cannot be held liable as a partner in such firm, where he neither held himself out as a partner nor allowed any one else to do so.]

[4. Where all the property of a partnership, if any partnership in fact exist, belongs to one member of the firm, and the others have no interest except in the gains and profits, such property will be liable, in the first instance, to the individual debts of the person owning it.]

[Appeal from the district court of the United States for the Northern district of Florida.]

In equity.

---

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

The bill was filed by Samuel A. Swann and others, claiming to be creditors of a partnership which, it was alleged, carried on the business of manufacturing lumber, and which, it was alleged, was composed of F. S. Chester, the bankrupt, E. N. Chester, Franklin E. Town, and Horace Stillman. The facts, as disclosed by the evidence, were as follows: Horace Stillman, a retired business man of fortune, residing in Buffalo, N. Y., was applied to by F. S. Chester, who also resided in Buffalo, and who had married Stillman's niece or adopted daughter, for a loan of money with which to start the business of manufacturing lumber at some point in this state. One purpose of F. S. Chester in desiring to engage in the enterprise was to afford occupation and give an opportunity for a start in business to his younger brother, E. N. Chester, and his brother's friend, Franklin E. Town. Stillman promised to advance the money to F. S. Chester as requested. In September, 1871, Town came to Fernandina, Fla., and there bought a sawmill, engine, and machinery, for which he paid with funds furnished to F. S. Chester by Stillman, and took a bill of sale therefor in the names of F. S. Chester and Stillman. In November, 1871, E. N. Chester, the younger brother of F. S. Chester, came to Fernandina, and on December 7, 1871, he and Town procured of one Peter Cone a 20 years' lease of a small tract of land on which to erect their mill. This lease was made to F. S. Chester and Horace Stillman, as composing the firm of Chester & Co., of the city of Buffalo, N. Y., and embraced six acres of land, with a yearly rent reserved of $100, with the right to purchase the fee simple for the price of $600. This lease was at once placed on record in the proper office in Nassau county, where the demised premises were situate. The two young men opened an office in Front street, Fernandina, over which they placed a sign with the firm name of Chester & Co., and proceeded to erect their mill upon the land leased from Cone. E. N. Chester had a written contract with F. S. Chester, dated January 15, 1872, by which E. N. Chester agreed to take charge of such part of the sawmill business carried on by the said F. S. Chester, on Bill's run, in Florida, as the latter should commit to him, and give his time and attention thereto for the period of five years, in consideration of which F. S. Chester agreed to pay him "a sum equal to the one-fourth part of the net profits of the business, such payment to be made on the 11th of April annually, and to advance him $100 per month on the first day of every month." The agreement provided that the same should not vest in said E. N. Chester any title or claim to the mill or property, or business connected therewith. F. S. Chester made a contract in similar terms with Franklin E. Town, who took charge of the running of the mill, while E. N. Chester conducted the office business in Fernandina. In the course of the business

E. N. Chester drew bills in the name of Chester & Co. on F. S. Chester, in Buffalo, N. Y., all of which were paid by him. Before the purchase of the mill and machinery the defendant and Stillman had loaned to F. S. Chester various sums, amounting in all to $20,000, for the purpose of establishing and carrying on the business, and these sums were used for that purpose.

In January, 1872, the defendant Stillman came to Fernandina, and examined the mill and other property, and on April 11, 1872, the defendant F. S. Chester executed and delivered to defendant Stillman a chattel mortgage upon the former's interest in the mill site and upon the mill building, engines, etc., to secure the payment to him of the sum of $15,000. This mortgage was duly recorded in the proper office of Nassau county, Fla. During the visit of Stillman to Fernandina in January, 1872, he learned for the first time that the lease from Peter Cone had been made to him and F. S. Chester jointly as partners. He at once declared that the statement implied by said lease, that he was a party to the lease, or a partner of F. S. Chester, was false. E. N. Chester promised defendant Stillman to inform Cone of the falsity of said statement in the lease, and to get Frank S. Chester to make, and Cone to accept, a surrender and cancellation of the lease, and to induce Cone to make, and F. S. Chester to accept, a new lease of the premises, and to have the cancellation and new lease put on record. This promise was fully performed, except that the new lease and the cancellation of the old lease were not put on record. These papers, however, were delivered to E. N. Chester, to be by him put on record in the proper office, and some time afterwards E. N. Chester informed Stillman that they had been so recorded. On April 11, 1872, Stillman took from F. S. Chester his bond of that date for $6,000, money loaned and to be loaned by him to F. S. Chester. This sum was in addition to the $15,000 before mentioned secured by mortgage. This bond recited that F. S. Chester proposed to pay said $6,000 within the period of five years, and in lieu of interest thereon to pay Horace Stillman a sum equal to one-fourth part of the net earnings, gains, and profits of said sawmill and business, while said principal sum of $6,000 should remain unpaid. This appeared to have been a temporary arrangement, for in November following this bond was given up, and F. S. Chester executed and delivered to Stillman his notes for the amount. In October, 1872, there was due to Stillman from F. S. Chester, for money loaned, the additional sum of $8,000. This was secured by a mortgage from F. S. Chester to Stillman on the mill property, duly recorded and dated in October, 1872. First and last, Stillman loaned to F. S. Chester sums amounting in the aggregate to $30,000. He never received payment of any part of this sum, or any interest thereon, in any

manner or shape. The business was carried on by E. N. Chester and Town with no profits, but at considerable loss, until the winter of 1872–73. Supplies of various kinds were furnished on credit, by complainants and others, who, in January or February, 1873, commenced suits by attachment for the recovery of their claims To secure an equal distribution of the assets of F. S. Chester among his creditors, Stillman, as he alleged, commenced proceedings in involuntary bankruptcy against him, and on March 19, 1873, he was adjudicated a bankrupt. A few days before the last-named date, F. S. Chester, who was indebted to Cone for rent of the mill site, and who claimed to be unable to pay the sum due, surrendered the lease to Cone, and thereupon Cone conveyed the mill site in fee simple to the wife of Stillman for the consideration of $2,400 in money.

The bill in this case was filed by a large number of the creditors of the so-called firm of Chester & Co., who joined as complainants, against Winton A. Sanborn, assignee of F. S. Chester, and against E. N. Chester, F. E. Town, and Horace Stillman. The theory and averment of the bill was that F. S. Chester, E. N. Chester, F. E. Town, and Horace Stillman were partners in the mill business under the name of Chester & Co.; that the mill and its appurtenances were the property of said firm, and should be primarily applied to the payment of its debts; and that the proceedings of the assignee, by which said property was seized as the individual property of F. S. Chester, and his purpose to apply it to the discharge of the individual debts of F. S. Chester, were in violation of the rights of the creditors of the firm. The prayer of the bill was that the assets of the late firm of Chester & Co., which had been returned to the bankrupt court as assets of the bankrupt estate of F. S. Chester, and were in the possession of his assignee, might be adjudged primarily liable for the debts of Chester & Co., and that such order and decree might be made in the premises as would protect the rights of complainants as creditors of the firm of Chester & Co., and enable complainants to subject such assets to the payment of their claims. The district court made a decree substantially in accordance with the prayer of the bill, and the defendants appealed to the circuit court.

L. I. Fleming, J. J. Daniel, and F. P. Fleming, for complainants.

C. P. Cooper and Robert M. Smith, for defendants.

WOODS, Circuit Judge. It is claimed by defendants that the case made by the bill does not fall within the equity jurisdiction of the courts of the United States. As the complainants are all citizens of Florida, and Sanborn, the assignee, who is one of the principal defendants, is also a citizen of Florida, the jurisdiction is not based upon the

citizenship of the parties, but must be conferred, if at all, by the bankrupt act. The complainants rely on section 4970 of the Revised Statutes as their warrant for bringing the suit in the United States court. That section declares: "The several circuit courts shall have within each district concurrent jurisdiction with the district court * * * of all suits at law or in equity brought by an assignee in bankruptcy against any person claiming an adverse interest, or by any such person against an assignee, touching any property or rights of the bankrupt transferable to or vested in such assignee." Now it is perfectly clear that this is a suit in equity brought against the assignee by persons claiming an adverse interest touching property or rights of the bankrupt transferable to or vested in such assignee. The charge is that the assignee has possession of property, which he holds as the individual property of F. S. Chester, and which he is about to apply to the payment of the individual debts of F. S. Chester, which in fact belongs to the firm of Chester & Co., of which they are creditors, and which should be first applied to the payment of the debts of that firm. Clearly, this is the very case provided for by the section first cited. The case of Stickney v. Wilt, 23 Wall. [90 U. S.] 150, sustains the jurisdiction in a similar case. The objection made by counsel for defense seems to be more to the decree of the district court than to the purview of the bill. The court may have exceeded its jurisdiction in the making of the decree. That, however, is not the question made. The real question is, has this court the jurisdiction to grant the relief or any of the relief prayed for? If it has, it must retain the bill for that purpose. It is conceded that the court has jurisdiction to decide, in this case, upon the claims of the complainants to have this property, as the property of Chester & Co., applied to the payment of their debts. It is therefore the duty of the court to pass upon this question, at least, and if the district court went further by its decree than was warranted by its jurisdiction, that fact does not change the duty of this court. The decree of the district court is vacated by the appeal. The case comes here for trial de novo, and the question is entirely open in this court what decree it shall make. But this objection to the decree does not seem to me well founded. It was the duty of that court, sitting as a court of equity, having jurisdiction of the parties and subject-matter, to do complete justice, and not, having decided that the complainants were entitled to have the property in controversy applied first to the payment of their debts, to turn them over to another forum to complete the relief to which they were entitled. I am of opinion, therefore, that the objection made to the jurisdiction of this court is not well taken.

I proceed to consider other questions raised by the record. The bill appears to be de-

fective for want of a sufficient averment that the complainants have reduced their claims against the alleged firm of Chester & Co. to judgment. Without judgment the complainants have no right to insist on payment of their claims out of any specific property of their debtors. They have a right to be paid so much money by their debtors, but have no lien or claim upon any property of their debtors. The bill does not allege the recovery of judgments by the complainants. It is true it refers to an exhibit which contains a list of the creditors of the alleged firm of Chester & Co., giving amounts, and opposite some of them is written the word "Judgment" and a date. If this is intended as an averment that such claims have been reduced to judgment, it is a very ineffectual and insufficient way of making such an averment.

Passing over this defect in the bill, I proceed to a consideration of its merits. The first claim I shall notice is that there was a partnership under the firm name of Chester & Co., of which Horace Stillman was a member. From this the inference is drawn that the firm could not be indebted to him, and he could not hold liens upon its property executed by another member of the firm in his own name. Without deciding whether this conclusion follows from the premises, I am entirely satisfied that the proof fails to show that Stillman was a partner in the alleged firm. There is no evidence to show that, as between Stillman and the other alleged partners, there was any partnership. The proof is clear and uncontradicted that he was not. But it is claimed by complainants that he was a partner as to strangers. He could only be made such by holding himself out as a partner, or allowing the other partners, with his knowledge, to hold him out as a partner. That he never held himself out as a partner is clear. The evidence is all on one side upon that issue. There is no evidence that he knew that the other so-called partners were holding him out as a partner, and no evidence that they did hold him out as such partner, with the exception of two instances. These are that Town took a bill of sale of the engine and mill in the name of F. S. Chester and Stillman, and the other that the lease by Cone for a mill site was made to F. S. Chester and Stillman as partners. As to the first, there is no evidence that it ever came to the knowledge of Stillman; and as to the second, it is in evidence that, when Stillman discovered, in February, 1872, the terms of the lease, he at once denounced it as implying a falsehood, and required the lease to be canceled, and a new one executed in the name of F. S. Chester alone, and that he required the cancellation of the first lease, and that the new lease and the cancellation of the old lease should be put upon the public records of the county, and supposed it had been done. The bill avers, it is true, that with the business public, in the vicinity of the mills and in Fernandina, the general impression was that Stillman was a partner in the firm of Chester & Co. Upon this averment the proof is conflicting. But it is not pretended, nor does the bill aver, that Stillman knew that any such idea existed. He did not represent himself to be a partner, nor did any of his alleged partners so represent him. But it is claimed that the bond for $6,000, given by F. S. Chester to Stillman, in which the former agreed, in lieu of interest, to pay Stillman a sum equal to the fourth part of the net profits of the sawmill and business, made Stillman a partner in the business. Whether this made Stillman a partner it is unnecessary to decide. It could only make him a partner while this bond was in force, and only those persons who credited the firm while Stillman retained this bond could hold Stillman as a partner. There is no averment in the bill, and no proof, that any of the complainants became creditors of the firm while Stillman held the bond, or that they ever knew of the existence of the bond, and no proof in the record to sustain such an averment, if there were. In short, the attempt to hold Stillman as a partner of the alleged firm of Chester & Co. has failed.

As to the claim, made by the bill, that E. N. Chester and F. E. Town were partners in the firm of Chester & Co., the evidence shows conclusively that they were not in fact partners; but it shows that, with the knowledge of F. S. Chester, they held themselves out as such. The truth is that there was, in fact, no such firm. The property all belonged to F. S. Chester. It was bought with his money, and owned by him exclusively. Now, under this state of facts, which class of creditors is entitled to priority of payment out of this property,—the creditors of F. S. Chester, or the creditors of the supposed partnership? F. S. Chester never reported that E. N. Chester and Town were part owners of the mill and other property of Chester & Co. His exclusive title to this property could not be divested by any statements made in relation thereto by E. N. Chester and Town. If the firm of Chester & Co. existed as to strangers, it was a firm in which F. N. Chester owned all the property, and the other partners were interested only in the business, in its gains and profits. All the products of the business—all the lumber made, for instance—were liable for the partnership debts; but the individual property of one of the partners, even though used by the partnership to carry on its business, was liable in the first instance for the individual debts of the owner. Murrill v. Neill, 8 How. (49 U. S.) 414. If I am right upon this proposition, the prayer of the bill, that this property may be first subjected to the payment of the partnership debts, cannot be sustained. It is individual, and not partnership, property, and must be first applied to the individual debts of the owner. The fact is that the complainants gave credit to the supposed firm of Chester & Co. without any inquiry as

to the condition of the partnership or the title to the property with which the partnership business was carried on. Any inquiry, addressed either to F. S. Chester or to Stillman, would no doubt have elicited the truth. No such inquiry was made. The rights of these men are not to be denied because the complainants have blindly bestowed credit on a supposed firm which had no means except what it might make in carrying on its business. The conduct of F. S. Chester in allowing the lease of the mill site to become forfeited, and the conveyance of the property to Mrs. Stillman, is a matter entirely immaterial to these complainants. The lease itself, burdened with a yearly rent reserved of $100, was of little or no value; and even if its value had been considerable, it appears very clearly by the averments of the bill that the property of F. S. Chester, including the lease of the mill site, would be insufficient to pay the mortgages to Stillman. Without an averment that there would be a surplus after paying Stillman his claims, the disposition of the lease is a matter in which complainants have no concern. The case is that Stillman loaned $30,000 to F. S. Chester, to be used for the erection of his mill and the carrying on of the business. F. S. Chester was the only one of the three persons engaged in any way in the enterprise who had any money. The property used in the business was all his individual property, and did not belong to the firm. The property was bought with money furnished by Stillman, under an agreement that he should be secured by mortgages upon it. He has mortgages of record to the amount of $23,000, which appears to be the full value of the property. The assignee of F. S. Chester is entitled to this property, for it is the individual property of F. S. Chester, and cannot be taken for his partnership debts until his individual debts are paid. The property will not pay these debts. The complainants' partnership creditors have, therefore, no claim to this property, and their bill seeking to subject it to their debts must be dismissed, at their costs.

Decree accordingly.